[PUBLISH]

IN THE UNITED STATES COURT OF APPEALS

FOR THE ELEVENTH CIRCUIT
_____

FILED
U.S. COURT OF APPEALS
ELEVENTH CIRCUIT
JULY 1, 2009
THOMAS K. KAHN
CLERK

No. 08-16987
Non-Argument Calendar
_____

D. C. Docket No. 06-00048-CR-T-17EAJ

UNITED STATES OF AMERICA,

Plaintiff-Appellee,

versus

VIRGIL LEE MORAN,

Defendant-Appellant.

_____

Appeal from the United States District Court
for the Middle District of Florida

_____

(July 1, 2009)

Before BIRCH, HULL and PRYOR, Circuit Judges.

PRYOR, Circuit Judge:

This appeal presents an issue of first impression: whether a defendant is

entitled to notice before a district court may impose special conditions of supervised release to address a defendant's proclivity to sexual misconduct when the crime of conviction did not involve sexual activity. Virgil Lee Moran, a convicted sex offender, was convicted of being a felon in possession of a firearm after officers discovered him living with his girlfriend and her minor daughter in violation of his terms of supervised release for an earlier conviction. Soon after officers discovered Moran in that residence, state officials charged him with failing to register as a sex offender. Moran argues that he was entitled to notice before the district court imposed special conditions of supervised release related to potential sexual misconduct. Moran also argues that there is no reasonable relationship between those special conditions and his conviction for being a felon in possession of a firearm. 18 U.S.C. §§ 922(g)(1), 924(e). In the light of the decision of the Supreme Court in Irizarry v. United States, 128 S. Ct. 2198 (2008), we conclude that no notice was necessary. We also conclude that the district court did not abuse its discretion in imposing the special conditions on Moran's supervised release. We affirm.

## I. BACKGROUND

In 2003, Moran began a three-year term of supervised release following his conviction in 1998 for unlawfully transporting firearms and knowingly making

2

false statements in the acquisition of those firearms. One year later, a confidential informant told Moran's probation officer that Moran was not living with his mother. Because Moran had failed to report a change of residence, the probation office obtained a warrant to search Moran's new residence. During the search, probation officers and agents of the Bureau of Alcohol, Tobacco, Firearms, and Explosives discovered among Moran's personal items a .25 caliber firearm.

Moran was indicted as a felon in possession of a firearm. The indictment alleged that Moran possessed a firearm following his conviction for three crimes: grand theft, committing a lewd and lascivious act on a child, and dealing in stolen property. Moran pleaded guilty to the possession charge without the benefit of a plea agreement.

The presentence investigation report stated that Moran was discovered by police living with his girlfriend and her minor daughter. State officials later charged Moran with failing to register as a sex offender living at that address. Fla. Stat. § 943.0435. The report mentioned that Moran had an outstanding arrest warrant for that offense.

The presentence report described, among the 23 arrests, charges, and convictions amassed by Moran, two convictions for sex-related crimes. In August 1994, Moran pleaded no contest to committing a lewd and lascivious act on a child

under the age of sixteen and was sentenced to prison and sex offender counseling. The report stated that, while Moran's girlfriend was babysitting a four-year-old girl, Moran followed the child into a bathroom, placed her on a vanity, and inserted his finger into her vagina. Also in August 1994, Moran pleaded no contest to assault as a lesser-included offense of sexual assault. The report stated that Moran had forced the victim at knifepoint into his truck, where he beat, kicked, and raped her.

The presentence report also stated that Moran had been arrested in Florida on three occasions for sexual crimes against his wife and child. In January 1994, Moran was charged for the kidnapping, false imprisonment, and sexual assault of his wife, Tonia Moran, after she reported that Moran had used a knife to imprison and sexually assault her for two days. The charges were later dropped. In March 1994, Moran was charged for the sexual battery by force and aggravated battery of Tonia after she reported that Moran beat her, choked her, and forced her at knifepoint to have sex. Those charges were dropped as well. In October 1995, Moran was charged for sexual battery and committing a lewd and lascivious act on a child under the age of twelve after he allegedly sexually assaulted and beat his daughter. These charges were nol prossed.

Moran objected to the presentence report. Moran denied abusing his wife

4

and child and argued that his sister-in-law had concocted the allegations. Moran requested the district court grant a downward departure because Moran possessed the firearm for self-protection. United States Sentencing Guideline § 5K2.12 (Nov. 2004). Moran did not contest his conviction of a sex offense against a minor in 1994.

At the sentencing hearing, Moran testified that he possessed a firearm because his mother's neighbor had threatened to kill him. The district court accepted Moran's testimony "at face value," but commented that the threats "occurred . . . because of your past history and the impression of that neighbor regarding your past history with regard to children." The district court remarked that Moran's "history at the age of 42[,] . . . [his] conduct towards children, including a child at the age of four, . . . [a]nd [his] continual activity of crime and sexual activity of people in varying ages is nothing to be proud of." The district court denied Moran's request for a downward departure.

The district court sentenced Moran to 63 months of imprisonment and three years of supervised release. In addition to the standard conditions of release, the district court imposed several special conditions of release. The special conditions required Moran to "participate in a mental health program specializing in sex-offender treatment"; register under the Sexual Offender Registration and

5

Notification Act as a sex offender in "any state where he resides, visits, is employed, carries on a vocation, or is a student, as directed by his probation officer"; comply with instructions from his probation officer to provide state officials with information required by the Florida Sexual Predators Act, Fla. Stat. § 943.0435(2); refrain from "direct contact with minors under the age of 18 without the written approval of [his] probation officer and . . . refrain from entering into any area where children frequently congregate, including schools, daycare centers, theme parks, and playgrounds, et cetera"; refrain from possessing, subscribing, or viewing "any video, magazines, or literature depicting children in the nude and/or in sexually explicit positions"; "not possess or use a computer with access to any online service at any location, including employment, without written approval from [his] probation officer"; and "submit to a search of his person, residence, place of business, any storage units under his control, computer or vehicle at a reasonable time in a reasonable manner based upon reasonable suspicion of contraband or evidence of a violation of a condition of release."

When the district court asked for objections, defense counsel stated that he had "a generalized objection, because [he was] not really prepared to respond to all of the sexual-offender conditions . . . ." The district court responded that Moran could respond after a break for lunch. When the hearing resumed, defense counsel

6

"advise[d] the Court that [he] hadn't . . . previously been apprised that those were going to be the sanctions that would be imposed" and, even though he had not "specifically examined the statutes that might be behind those," he "couch[ed] an objection" based on the staleness of Moran's "sexual offense in 1994," his lack of recidivism, and the failure of the court earlier to "impose these kinds of conditions" for transporting firearms. Defense counsel argued that the "allegations that surfaced" regarding Moran's wife and child were "false accusations" and "came out to be unsubstantiated to the point where they didn't even prosecute him." Defense counsel also argued that the decision to impose the special conditions "on the basis of what happened in 1994 might subject [Moran] to unnecessary conditions of supervised release" and suggested as an alternative that Moran undergo "a mental evaluation and then treatment as necessary if someone, a professional, evaluates him and determines that" Moran "is some kind of a threat or has some sort of a problem to go forward."

The district court asked the probation officer for his opinion "with regard to the litany of restrictions." The probation officer responded that "the sex-offender treatment is dynamic" and that Moran "would be evaluated throughout the process" and could be released "[i]f at some point Mental-Health Treatment doesn't feel he needs the treatment . . . ." The probation officer expressed concern

that "the least [Moran] did was commit a lewd and lascivious act on a four-year-old child"; "recommend[ed] the sexual-offender treatment"; and agreed with the "rest of the other restrictions[.]"  The district court overruled Moran's objection.

## II. STANDARDS OF REVIEW

We review the imposition of special conditions of supervised release for abuse of discretion.  United States v. Taylor, 338 F.3d 1280, 1283 (11th Cir. 2003). "We will reverse only if we have a 'definite and firm conviction that the [district] court committed a clear error of judgment in the conclusion it reached.'"  Id. (quoting Davenport Recycling Assocs. v. Comm'r of Internal Revenue, 220 F.3d 1255, 1258 (11th Cir. 2000)).  Objections not raised in the district court are reviewed for plain error.  United States v. Nash, 438 F.3d 1302, 1304 (11th Cir. 2006).

## III. DISCUSSION

Moran challenges two aspects of the special conditions imposed by the district court.  First, Moran argues that the district court should have made him aware it planned to impose special conditions of supervised release.  Second, Moran argues there is no reasonable relationship between the special conditions and his offense of conviction.  We address each argument in turn.

*A. Moran Was Not Entitled To Notice of an Intent To Impose Special Conditions.*

8

Moran argues that he is entitled to a new sentencing hearing because the district court failed to provide notice that it intended to impose special conditions on his supervised release. Moran argues that, if he had received notice, he would have marshaled evidence to refute the dismissed charges of sexual misconduct involving his wife and child. Moran contends that the recess granted by the district court did not correct this deficiency.

The government responds that we should review for plain error because Moran failed to present the issue of notice to the district court, but we disagree. Moran complained to the district court about the lack of notice. "To preserve an issue for appeal, one must raise an objection that is sufficient to apprise the trial court and the opposing party of the particular grounds upon which appellate relief will later be sought." United States v. Straub, 508 F.3d 1003, 1011 (11th Cir. 2007), cert. denied, 129 S. Ct. 40 (2008). Moran told the district court that he did not anticipate the special conditions, he was not familiar with the relevant statutes, and his ability to respond was hampered by the lack of notice.

Moran contends that the demands of due process that motivated the Supreme Court in Burns v. United States, 501 U.S. 129, 111 S. Ct. 2182 (1991), to require notice before departing upward under the Sentencing Guidelines mean that notice is also required before the district court can impose special conditions of

9

supervised release, but we disagree. Some of our sister circuits have required notice before the imposition of sex offender special conditions, see United States v. Atencio, 476 F.3d 1099, 1108 (10th Cir. 2007), overruled on other grounds by Irizarry v. United States, 128 S. Ct. 2198, 2201 n.1 (2008); United States v. Wise, 391 F.3d 1027, 1032–33 (9th Cir. 2004); United States v. Angle, 234 F.3d 326, 346–47 (7th Cir. 2000); United States v. Coenen, 135 F.3d 938, 941–43 (5th Cir. 1998), but those decisions are based on the reasoning in Burns. A more recent decision of the Supreme Court explains that Burns required notice only in the "narrow category of cases" that involved an upward departure for an aggravating or mitigating circumstance that had not been accounted for "in formulating the guidelines," 18 U.S.C. § 3553(b), and was not identified as a reason to depart in either the presentence investigation report or a prehearing pleading, Irizarry, 128 S. Ct. at 2202. The Supreme Court affirmed a decision of this Court, see Irizarry v. United States, 458 F.3d 1208, 1212 (11th Cir. 2006), that the notice requirement of Burns does not apply to a variance from the advisory range under the Sentencing Guidelines. The Court reasoned that its decision in United States v. Booker, 543 U.S. 220, 125 S. Ct. 738 (2005), eradicated any genuine expectation that a defendant would necessarily receive a sentence within the advisory guideline range. Irizarry, 128 S. Ct. at 2202. The Court expressed confidence that the

10

procedural protections afforded in Federal Rule of Criminal Procedure 32, such as the rights to review and object to the presentence report and to comment and present mitigating evidence, coupled with the "'fluid and dynamic process'" of sentencing, would allow a defendant to anticipate and respond to facts that would affect the final sentence. Id. at 2203–04 & n.2 (quoting United States v. Vega-Santiago, 519 F.3d 1, 4 (1st Cir. 2008) (en banc)). The same is true here.

A defendant ordinarily should not be surprised when a sentencing court imposes conditions of supervised release. The Guidelines contemplate that a defendant will receive a term of supervised release. 18 U.S.C. § 3583(a). Supervised release is mandated whenever a sentence exceeds one year of imprisonment and may be imposed at the discretion of the district court "follow[ing] imprisonment in any other case." U.S.S.G. § 5D1.1. Supervised release, by its nature, comes with conditions.

The district court was not required to notify Moran before it imposed special conditions to address his proclivity for sexual misconduct. Although Moran expressed surprise that his history of sexual misconduct affected the conditions of his supervised release, he did not allege, nor does the record suggest, that he was prejudiced by the court's pronouncement. Moran's misconduct was detailed in the presentence investigation report, and the record reflects that Moran knew the

11

district court likely would consider his criminal history in determining an appropriate sentence. Moran addressed the allegations of sexual misconduct both before and at sentencing, and he did not move for a continuance to develop additional arguments or submit evidence to refute those allegations.

*B. The District Court Did Not Abuse Its Discretion By Imposing Special Conditions of Supervised Release.*

Moran challenges the special conditions of his supervised release. Moran argues that the conditions are not reasonably related to the nature and circumstances of his conviction, his history and characteristics, or the purposes of sentencing and they unnecessarily infringe on his liberty. We address these concerns as they relate to each special condition of Moran's supervised release.

The district court must consider what conditions best accomplish the purposes of sentencing. 18 U.S.C. § 3583(c). The court must consider the history and characteristics of the defendant, provide both adequate punishment and rehabilitation of the defendant, and protect society at large. Id.; see also id. § 3553(a). "[I]t is not necessary for a special condition to be supported by each factor enumerated in § 3553(a). Rather, each is an independent consideration to be weighed." United States v. Zinn, 321 F.3d 1084, 1089 (11th Cir. 2003) (citing United States v. Bull, 214 F.3d 1275, 1278 (11th Cir. 2000)). Although "a condition of supervised release should not unduly restrict a defendant's liberty, a

12

condition is not invalid simply because it affects a probationer's ability to exercise constitutionally protected rights." Id.

### 1. Moran's History and Characteristics Support the Decision To Impose Mental Health Treatment.

Moran complains that he should not be required to participate in a mental health program for sex offenders, but we disagree. The Sentencing Guidelines recommend that a district court order, as a special condition of supervised release, that the defendant participate in a mental health treatment program "[i]f the court has reason to believe that the defendant is in need of psychological or psychiatric treatment." U.S.S.G. § 5D1.3(d)(5). Moran has a documented history of sex-related offenses, and he does not dispute that he is a convicted sex offender. Treatment could assist Moran in avoiding similar future misconduct, which would protect the public. See 18 U.S.C. 3583(c); id. § 3553(a)(2)(C).

Moran offers four reasons that this condition was imposed in error, but none of his reasons are persuasive. First, Moran argues that the special condition is not related to his conviction, but we have approved of mental treatment to address unrelated prior crimes. See Bull, 214 F.3d at 1276–78. Second, Moran contends that the remoteness of his previous conviction for a sexual offense establishes that he does not require treatment, but Moran's conviction was not too remote. See United States v. York, 357 F.3d 14, 21 (1st Cir. 2004) (affirming, as a term of

13

supervised release for mailing a threatening letter to an estranged common law spouse, the imposition of sex offender special conditions based on convictions for indecent assault on minors three and nine years earlier). Moran's argument also ignores that he was discovered in a household containing a minor female soon after his release from prison and had failed to register as a sex offender under state law. Third, Moran assumes that treatment would be unduly burdensome because of his heart condition, but he provides no explanation how the program would exacerbate that condition. Fourth, Moran complains for the first time on appeal that the treatment program would inflict an "'excessive infringement'" on his liberty, but the record does not support his argument. The probation officer testified that Moran would undergo regular evaluations and, if further treatment was unnecessary, he would be released from the program. Based on Moran's history and characteristics, the district court did not abuse its discretion, much less plainly err, by ordering Moran to undergo mental treatment as a sex offender.

2. Moran Was Required To Register As a Sex Offender.

Moran argues that he should not have to register as a sex offender because that special condition is not reasonably related to his conviction as a felon in possession of a firearm, but we disagree. The Sex Offender Registration and Notification Act requires a sex offender to register in each jurisdiction where he

14

resides, is employed, or is a student. 42 U.S.C. § 16913(a). Although Moran was convicted before the effective date of the Act, its provisions "apply to all sex offenders, including sex offenders convicted of the offense for which registration is required prior to the enactment of that Act." 28 C.F.R. 72.3 (2007). Because federal law requires a sentencing court to "order, as an explicit condition of supervised release, that the defendant not commit another Federal, State, or local crime during the term of supervision[,]" 18 U.S.C. § 3583(d), Moran's failure to register under the Act and the applicable state law, Fla. Stat. § 943.0435, would have violated this mandatory condition of supervised release. The district court did not abuse its discretion by requiring Moran to register as a sex offender.

3. Moran's History Supports a Limit on Contact With Minors.

Moran challenges for the first time on appeal the special condition that he refrain from direct contact with minors as burdening his freedom of private association, but his argument is foreclosed by our decisions in Zinn, 321 F.3d at 1088, and Taylor, 338 F.3d at 1286. Moran acknowledges that the right of association "may properly be restricted where the doing so is necessary to protect the public," and the district court was entitled to find that a restriction on Moran's affiliation with children was justified based on previous incidents involving minor victims. Because the special condition promotes rehabilitation and protects the

15

public, the district court did not plainly err by restricting Moran's contact with minors.

### 4. Moran's History Supports a Restriction on Video and Printed Sources of Child Pornography.

Moran challenges the restriction on his ability to access different sources of media, but this argument fails. Moran was previously convicted of a sexual offense against a child and an offense that involved both violence and sexual misconduct. Limiting access to materials that encourage, if not further cultivate, those prurient interests, protects the public. See 18 U.S.C. § 3553(a)(2)(C). We cannot say that the decision of the district court to impose this condition was an abuse of discretion.

### 5. A Restriction on Access To the Internet Is a Reasonable Condition of Supervised Release.

Moran complains that the limitation on access to the internet infringes on his liberty and, given his health condition, "effectively cut[s] off his ability to interact with the outside world[,]" but we rejected a similar argument in Zinn. Although the internet provides valuable resources for information and communication, it also serves as a dangerous forum in which an offender can freely access child pornography and communicate with potential victims. Moran may "still use the Internet for valid purposes by obtaining his probation officer's prior permission."

16

<u>Zinn</u>, 321 F.3d at 1093. Although the condition infringes on Moran's liberty, it is not unduly restrictive. The district court did not abuse its discretion.

### 6. Moran Is Required To Submit to Reasonable Searches.

Moran also challenges the special condition that he submit to searches based on reasonable suspicion, but that condition is warranted. A sentencing court has discretion to

> order, as an explicit condition of supervised release for a person who is a felon and required to register under the Sex Offender Registration and Notification Act, that the person submit his person, and any property . . . and effects to search at any time, with or without a warrant, by any law enforcement or probation officer with reasonable suspicion concerning a violation of a condition of supervised release or unlawful conduct.

18 U.S.C. § 3583(d). Based on evidence that Moran violated the terms of his supervised release, the district court did not abuse its discretion by imposing the condition.

### IV. CONCLUSION

We **AFFIRM** Moran's sentence.

17